# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| OCTAL INC.,<br>OCTAL SAOC-FZC<br><br>          *Plaintiffs,*<br><br>          v.<br><br>United States,<br><br>          *Defendant.* | Court No. 22-00352 |

## COMPLAINT

Plaintiffs OCTAL Inc., and OCTAL SAOC-FZC (collectively "OCTAL" or "Plaintiffs"), by and through their counsel, state the following claims against Defendant, the United States:

1. Plaintiffs seek judicial review of the U.S. Commerce Department's ("Commerce") final results of anti-dumping duty administrative review and final determination of Polyethylene Terephthalate Resin From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; covering the period May 1, 2020 to April 30, 2021. *See Polyethylene Terephthalate Resin From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2020–2021,* 87 Fed. Reg. 75,594 (Dec. 9, 2022), (Case No. A–523–810).  ("*Final Results*"). Issue and Decision Memorandum dated December 2, 2022 ("*I&D Memo*").

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 19 U.S.C.§ 1516a(a)(2)(A)(I) and 19 U.S.C.§ 1516a(a)(1)(D) to review a final affirmative less than fair value determination issued by Commerce under 19 U.S.C. § 1675. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

3. Plaintiff OCTAL Inc., is a U.S. importer of the subject merchandise. Plaintiff OCTAL SAOC-FZC is a foreign producer and exporter of subject merchandise. Plaintiffs are, therefore, interested parties as defined in section 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiffs fully participated in the proceeding being challenged. Accordingly, Plaintiffs have standing to bring this action under section 516A(d) of the Tariff Act of 1930, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS OF THIS ACTION

4. Commerce published its Final Results on December 9, 2022. *See Polyethylene Terephthalate Resin From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review*; 2020-2021, 87 Fed. Reg. 75,594 (Dec. 9, 2022).

5. This action was commenced with the filing of the Summons on December 29, 2022, within 30 days of the publication of the Final Results.. Accordingly, this action is timely filed. 19 U.S.C. § 1516a(a)(2)(A).

**STATEMENT OF FACTS**

6. Commerce published the antidumping duty order on PET resin from Oman on May 6, 2016. *See Certain Polyethylene Terephthalate Resin from Canada, the People's Republic of China, India, and the Sultanate of Oman: Amended Final Affirmative Antidumping Determination (Sultanate of Oman) and Antidumping Duty Orders*, 81 Fed. Reg. 27,979 (May 6, 2016).

7. On May 3, 2021, Commerce notified interested parties of the opportunity to request an administrative review of the Order for fifth period of review time period (referred to as "POR5") that is, May 1, 2020 through April 30, 2021). *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 86 Fed. Reg. 23,346 (May 3, 2021).

8. On May 28, 2021, DAK Americas LLC, Indorama Ventures USA, Inc., and Nan Ya Plastics Corporation, America (collectively, the petitioners), domestic producers requested that Commerce conduct an administrative review of OCTA for the POR5 time period. On July 6, 2021, Commerce initiated an administrative review of the Order for the POR5 time period with respect to import entries by and from OCTAL. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 35,481 (July 6, 2021).

9. Between July 19, 2021 and April 19, 2022, Commerce issued the AD questionnaire, and supplemental questionnaires to OCTAL. As in prior administrative reviews, OCTAL provided timely and complete responses to each of the questions posed by Commerce.

10. Between September 7, 2021 and February 16, 2022, the petitioners filed comments regarding OCTAL's responses. On May 13, 2022, and May 16, 2022, the petitioners and OCTAL, respectively, filed comments for consideration in the preliminary results of review. On May 23, 2022, OCTAL and the petitioners filed rebuttal pre-preliminary comments.

11. On June 7, 2022, Commerce published its preliminary AD determination. *See Polyethylene Terephthalate Resin From the Sultanate of Oman: Preliminary Results of Antidumping Duty Administrative Review; 2020–2021*. 87 Fed. Reg. 34,643 ("Preliminary Results"). The Preliminary Issue and Decision Memorandum was adopted on May 31, 2022 ("Prelim. I&D"). In its *Preliminary Results*, Commerce calculated a dumping margin of 1.27% for OCTAL.

12. Concerning the appropriate "date of sale" for OCTAL's U.S. sales transactions, Commerce's Preliminary I&D memo stated as follows: "Because OCTAL provided sufficient information to demonstrate that the dates of sale that it reported for its U.S. sales better reflects the dates on which it established the materials terms of these sales, we accepted the reported dates as the dates of its U.S. sales." Commerce Preliminary I&D Memo at 4-5.

13. On June 3, 2022, Commerce issued a questionnaire to OCTAL in lieu of performing an on-site verification. On June 10, 2022, OCTAL responded to every single question in timely manner. Commerce did not issue any additional questionnaire to OCTAL asking for additional information or data.

14. On July 14, 2022, DAK Americas LLC, Indorama Ventures USA, Inc., and Nan Ya Plastics Corporation, America filed a case brief and OCTAL filed a letter in lieu of a case brief.

15. On July 22, 2022, OCTAL filed a rebuttal brief, contesting Petitioners' argument concerning OCTAL's date of sale. Specifically, OCTAL noted that Commerce had fully investigated OCTAL's date of sale approach, and that Petitioners' argument was not in accordance with applicable AD law and Commerce past practice. OCTAL further showed that petitioner's date of sales argument was premised upon a misunderstanding of the factual record, which clearly demonstrated that the final selling price for contract customer sales transactions is established when the specifically identified price index is published.

16. On December 9, 2022, Commerce issued its *Final Results* assigning an AD rate to OCTAL of 3.96%. See *Final Results* 87. Fed. Reg. 75,595. In its Final I&D Memo, Commerce clarified that it made the following changes since the Preliminary Results:

> (1) we used the invoice date (or shipment date, if earlier) as the date of sale rather than when the relevant price index was published as the date of sale for OCTAL's U.S. sales made pursuant to long-term contracts

Final I&D Memo at 2.

17. This change resulted in an increase of OCTAL's AD margin to 3.96%. *See* 87 Fed. Reg. 34,643 compared to 87. Fed. Reg. 75,595.

## STATEMENT OF CLAIMS

18. In the following respects, and for other reasons apparent from the administrative record of the underlying 2020-2021 AD administrative review, Commerce's decision in the *Final Results* concerning OCTAL is not supported by substantial evidence on the record and is otherwise not in accordance with law.

**Count 1:** **Commerce's decision to apply different "dates of sale" for OCTAL's U.S. sales transactions from those dates reported by OCTAL was not supported by substantial evidence and is otherwise not in accordance with law.**

19. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 18.

20. Commerce's Preliminary I&D memo stated as follows: "Because OCTAL provided sufficient information to demonstrate that the dates of sale that it reported for its U.S. sales better reflects the dates on which it established the materials terms of these sales, we accepted the reported dates as the dates of its U.S. sales." Commerce Preliminary I&D Memo at 4-5. However, in its Final Results, Commerce completely changed this decision and instead applied different dates sales for OCTAL's U.S. sales transactions made to its contract customers. *See* Final I&D Memo. This Commerce decision to ignore OCTAL's reported dates of sales for its U.S. sales transactions made to contract customer was not supported by substantial evidence.

21. In addition, Commerce's date of sale change was not in accordance with law as such decision is contrary to Commerce's own regulation and past practice concerning the appropriate date of sale to be employed.

**PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, Plaintiffs pray this Court enter judgment as follows:

(A) Enter judgment in favor of Plaintiffs;

(B) Hold as unlawful Commerce's final results in the contested administrative review that are the subject of this Complaint,

(C) Remand this proceeding to Commerce with instructions to publish revised final results in conformity with the Court's decision; and

(D) Grant Plaintiffs such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
James C. Beaty
Ana M. Amador Gil

Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Ave.
N.W. Washington, D.C.
20006
Tel. (202) 452-7373

*Counsel for Plaintiffs OCTAL Inc., and OCTAL SAOC-FZC*

December 29, 2022